Norman C. Ryp, J.
Should the public interest be ignored by the second most passionate relationship?
In this commercial holdover summary proceedings, respondent tenants ("tenants”) move, pursuant to subdivision (d) of *866 section 2900.21 of the rules of this court (22 NYCRR 2900.21 [d]) to extend the stay of issuance and execution of the warrant of eviction beyond June 8, 1976 until December 31, 1976, following the granting of a final judgment of possession of the third and fourth [fifth occupied by Tenant, Advance Printing Co., Inc., pursuant to stipulation in open court at the June 10, 1976 hearing herein] of premises No. 421 Hudson Street, County, City and State of New York, wherein tenants are sole occupants, under this court’s decision, dated May 14, 1976.
Tenants contend there is no economic hardship or prejudice to petitioner landlord ("landlord”) in view of a pending variance application to the New York City Board of Standards and Appeals; tenants will incur a $250,000 moving expense at this time and will be unable to fulfill its contractual printing obligations to the Board of Elections of the City of New York for registration materials and supplies as well as ballots, materials and supplies for the September 14, 1976 primary election and November 2, 1976 general election, for New York, Queens and Richmond Counties.
Landlord opposes this application beyond June 30, 1976 upon the grounds of economic hardship, especially if and when its pending variance application is granted; tenants had ample notice (at least formally since January 23, 1976) of landlord’s intended lease terminations on April 30 and May 31, 1976, respectively, to secure sufficient alternative conveniently located commercial space to fulfill its contractual printing obligations to the Board of Elections of the City of New York.
As noted in this court’s May 14, 1976 decision, the court, in a commercial holdover summary proceeding (CPLR 2201; CCA, § 212; 22 NYCRR 2900.21 [d]) has the power to grant a stay of issuance and execution of a warrant of eviction for a reasonable period upon such terms as may be just. (2 Rasch, New York Law of Landlord and Tenant, Summary Proceedings, § 1411; see Matter of Pepsi-Cola Met. Bottling Co. v Miller, 50 Misc 2d 40; also Novick v Hall, 70 Misc 2d 641; Fulton Redevelopment Co. v Kendall, 68 Misc 2d 813).
To determine whether and, if so, upon what reasonable and just terms, the court should exercise this discretionary power to stay, this court held a hearing on June 10, 1976 during which movant-tenants, besides its president, presented, as witnesses, a printer’s relocation consultant (who indicated a
*867 normal three to six month planning and moving lead time is usual) and the Executive Director of the Board of Elections of the City of New York (who testified that tenant, the Tabard Press Corporation, was its principal printer of ballots, supplies, materials for registration and elections over the past 25 years, noting especially heavy 1976 printing requirements in view of recent Election Law changes such as registration by mail (Election Law, § 385, as amd by L 1975, ch 166, § 6) less strict time and residency requirements for registration for special presidential and vice-presidential ballots (Election Law, §§ 340-342, as amd by L 1976, ch 143), plus the unusual size and complexity of the 1976 primary (September 14) and general election (November 2), ballot, including contests for United States President, Vice-President (Electors), Senate, Member of Congress, New York State Senate and Assembly in addition to various county and district public offices (including Judiciary) and local registration materials for early October, 1976), all subject to constant revision by judicial review. Landlord’s principals also testified to the serious economic hardship in maintaining an otherwise vacant building for a single tenant, including some fiscal itemization, plus serious resulting damages in the event the Board of Standards and Appeals granted landlord’s variance application (that would trigger various construction contracts, building loan commitments and mortgage obligations), which decision thereupon, this court is advised, has been "laid over” or adjourned until at least July 13, 1976.
Accordingly, after careful consideration and due deliberation of the applicable law, facts and in view of all circumstances herein including the public interest in the free exercise of right of suffrage, this court, in the reasonable exercise of its discretion concludes that justice will be done by the following:
(a) issuance and execution of the warrant of eviction shall be further stayed until August 11, 1976 unless the New York City Board of Standards and Appeals shall sooner grant landlord’s subject pending variance application, whereupon landlord may apply to vacate such stay under subdivision (d) of section 2900.21 of the rules of this court (22 NYCRR 2900.21 [d]) returnable to the Judge presiding in Trial Term, Part 52 (Non-Housing Part), if prior to July 30, 1976 or to this court thereafter; and
(b) In the event said Board of Standards and Appeals has *868 not granted or rendered any decision upon landlord’s pending variance application, either party may apply to vacate or further extend such stay, pursuant to subdivision (d) of section 2900.21 of the rules of this court (22 NYCRR 2900.21 [d]); and
(c) As a condition precedent to extending subject stay beyond June 30, 1976 in the interim and thereafter until further order of the court, tenant shall pay to landlord as and for reasonable use and occupancy, effective July 1, 1976:
(1) the same rate heretofore paid as rent (including any "additional rent”) contained in subject leases, expired April 30 and May 31, 1976 [third and fourth floors, part of the fifth floor]; plus
(2) a reasonable amount, in monthly installments, to be fixed by the court and paid to landlord without undue delay, following a hearing on or before August 11, 1976 and adequate evidence presented by the parties to reimburse landlord for any necessarily incurred additional (not covered by above Item [1] rent) expenses and resulting damages caused by landlord’s maintenance of subject building premises to service tenant’s sole occupancy.