In the Matter of the Application for the Construction of
the Will of WILLIAM W. PHIPPS, Deceased.

FRANK   W.   PHIPPS,   Appellant;   CLARA   E.   PHIPPS,
Respondent.

Will — construction of devise — evidence — when parol evi-
dence will be received to explain what lands are included in the
devise.

1. Generally speaking a will bears its own testimony, but where
the description of the property sought to be devised is so uncertain
as to leave in doubt what was the subject of disposition, parol evi-
dence is to be received and considered.   Such evidence is received,
not to contradict the provisions of the will, but, when it is doubt-
ful what lands are included in a devise, to explain to what particu-
lar pieces of land the language of the will referred.

2. The second clause of testator's will provided that in case his
wife survived him she should have the "life use of my Homestead
Farm containing about thirty acres of land, together with the
Mosher land, so-called, forming a part of said Homestead Farm."
On examination of the will and of the evidence given on the trial,
*held*, that the Surrogate's Court correctly held that the term
"Homestead Farm" as used in the will refers to the dwelling house
where the testator and his family lived, with its appurtenances and
outbuildings and the land used in connection therewith, and does
not include other lands of the testator.

*Matter of Phipps*, 166 App. Div. —, reversed.

(Argued February 25, 1915; decided March 23, 1915.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
January 29, 1915, which modified and affirmed as modi-
fied a decree of the Orleans County Surrogate's Court
construing the will of William W. Phipps, deceased.

The facts, so far as material, are stated in the opinion.

*Isaac S. Signor* for appellant.   The words "Homestead
Farm" as contained in the will were properly construed
by the surrogate.   (*Rogers* v. *Wheeler*, 22 Wend. 148;

*Matter of Wheeler*, 32 App. Div. 187; *Matter of Hastings*, 6 Dem. 320.)

*Sanford T. Church* for respondent. The evidence introduced by petitioner fails to establish an intent on the part of testator to give to his wife any smaller quantity of land than the whole of the farm used together and occupied by him as a home at the time of the execution of the will in question. (*Matter of Love*, 149 App. Div. 347; 206 N. Y. 671; *Underhill* v. *Vandervort*, 56 N. Y. 242; *Jackson* v. *Beringer*, 15 Johns. 470; *Kendall* v. *Miller*, 47 How. Pr. 446; *Kennedy* v. *Kennedy*, 105 Ill. 350.) The intent of the testator as gathered from the whole instrument must control. (Redfield's Surr. Pr. 225; *Wager* v. *Wager*, 96 N. Y. 164.)

SEABURY, J. This proceeding was commenced in the Surrogate's Court in Orleans county on the petition of the only son of the testator, who is the appellant herein, for a construction of the last will and testament of his father, William W. Phipps, deceased. The appellant is the residuary legatee and devisee under the will. The respondent is the widow of the testator and the step-mother of the petitioner. The controversy involves the construction of the second clause of the will which reads as follows:

"In case my wife Clara E. Phipps shall survive me, then in such event, I give, devise and bequeath to my said wife, Clara E. Phipps, the life use of my Homestead Farm containing about thirty acres of land, together with the Mosher land, so-called, forming a part of said Homestead Farm, she to have the use, occupation, possession, enjoyment and control, and the rents, issue and profits thereof for and during her natural life, and at her death the same shall pass to and become the property of residuary legatee and devisee hereinafter named to whom subject to the life estate hereby given to my said wife Clara E. Phipps, I hereby give, devise and bequeath the same."

At the time the testator made his will and at his death, he owned four pieces of real estate in the town of Albion contiguous to one another. He owned no other land near these parcels. The four parcels which he owned consisted of the home farm which contained 25.68 acres, the so-called Mosher land, which contained 4.23 acres, the tenant place, which contained 7.81 acres, and a lane two rods wide, which was situated between the home farm and the Mosher land on the west and the tenant place on the east. The question in dispute is whether the words used in the second clause of the will, "my Homestead Farm containing about thirty acres of land, together with the Mosher land, so called, forming a part of said Homestead Farm," include the tenant place containing 7.81 acres. If these words do include the tenant place then the tenant place passes to the testator's widow under the second clause of the will. If they do not include the tenant place then the tenant place is not within the second clause of the will and falls into the residuary estate of the testator and passes to his son, the appellant herein. The surrogate held that this clause of the will did not include the tenant place. The Appellate Division modified the decree of the surrogate so as to provide that this clause of the will did include the tenant place. The order of the Appellate Division being silent as to the grounds of its decision modifying the decree of the surrogate, the presumption is that it was made solely as a matter of law. In view, therefore, of the form of the order appealed from, the question before us is whether there was any. evidence to sustain the finding of the surrogate. If we look only to the will itself, we find nothing that indicates that the testator intended to include the tenant place in the devise of "my Homestead Farm containing about thirty acres of land, together with the Mosher land, so called, forming a part of said Homestead Farm." The term "Homestead Farm" as used in the will refers to the dwelling house where the testator and his family lived,

with its appurtenances and outbuildings and the land used in connection therewith, and not to the tenant farm. (*Smith* v. *Dennis*, 163 Ill. 631; *McKeough's Estate* v. *McKeough*, 69 Vt. 34.) Generally speaking the testament bears its own testimony, but where the description of the property sought to be devised is so uncertain as to leave in doubt what was the subject of disposition, parol evidence is to be received and considered. Such evidence is received, not to contradict the provisions of the will, but to explain to what particular pieces of land the language of the will referred. The circumstances proved in this case support the conclusion that the testator did not intend to devise the tenant place to his wife under the second clause of his will. The will makes it clear that the Mosher land formed a part of the homestead farm, and that the testator estimated the homestead farm as "containing about thirty acres of land." The home farm itself contained 25.68 acres while the Mosher land contained 4.23 acres and together 29.91 acres or nearly thirty acres of land. If the tenant land is included the acreage devised would be 38.69 acres instead of thirty acres.

It appears that the testator for many years kept books of account in which he carefully inventoried at the end of each year all his property. He inventoried the home farm and the Mosher land together and included them as a single farm containing thirty acres. Thus in 1903, 1904 and 1905 he inventoried these two parcels of land by the use of the following words: "Thirty acres Home." In 1906 he purchased the land which is referred to as the tenant place, and after that for eight years he continued to inventory the home farm and Mosher land as one parcel, designating it as "Thirty acres Home," and the tenant place during all this period was not included within the home farm but was separately inventoried and valued as "Tenant house and 7½ acres," or "Tenant house 7.80 acres" or "Tenant 7.8 acres." The fact that the testator

[214 N. Y.] Opinion, per SEABURY, J. [Mar.,

specifically mentioned in the second clause of his will the Mosher land in addition to the home farm and referred to both parcels as "forming a part of said Homestead Farm" indicates, in the absence of any circumstance to the contrary, that if he had intended to include the tenant place as a part of the "said Homestead Farm" he would also have referred specifically to that parcel of land. If he intended by the words "forming part of my said Homestead Farm" to include all lands owned in the vicinity, it was unnecessary for him to have said "and together with the Mosher land, so-called." If he did not intend to include all lands in the vicinity of the home farm there is no basis for the claim that he intended to include the tenant place. In view of the fact that the home farm and the Mosher land together contained nearly thirty acres, that these two parcels adjoined one another and were always used together as a part of the same farm and were inventoried by the testator as one farm, it might have been inferred that the testator intended to include the Mosher land even if he had made no special reference to it in his will. The testator did not leave this matter open to doubt and conjecture, but in terms included the Mosher land as a part of the home farm. The special care which he took to clearly express his meaning in this respect indicates that if he had intended to include the tenant place he would have used language appropriate to express that intention.

The respondent argues that the whole property including the tenant place was one farm and that to ascertain what was intended to be included in the "thirty acres" referred to in the second clause of the will, we should exclude the Mosher land and estimate the acreage in the tenant place and the home farm which together contained thirty-three acres and that such property would fall within the words "about thirty acres of land." The vice of this argument lies in the fact that the language employed by the testator makes it clear that he regarded

the Mosher land as "forming a part of said Homestead Farm" and that he estimated the "Homestead Farm" as "containing about thirty acres of land." Thus the language he used excludes all reference to the tenant place. The interpretation placed upon this clause of the will by the surrogate was correct and the order of the Appellate Division modifying the decree of the surrogate should be reversed and the decree of the surrogate affirmed, with costs to the appellant in the Appellate Division and in this court.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, COLLIN, MILLER and CARDOZO, JJ., concur.

Order reversed, etc.