■ In the Matter of the Estate of PAUL J. McCABE, Deceased. ROBERT D. KIERNAN, SR., et al., as Coexecutors of PAUL J. McCABE, Deceased, Respondents; SISTERS OF ST. JOSEPH et al., Respondents. JOHN R. McGLENN, as Guardian ad Litem, Appellant. [703 NYS2d 559] —Cardona, P. J. Appeal from that part of an order of the Surrogate's Court of Chemung County (Buckley, S.), entered April 13, 1999, which construed the language contained in the fifth paragraph of decedent's last will and testament.

This appeal involves a dispute over the interpretation of a provision of the last will and testament of decedent, a Roman Catholic priest who died on August 25, 1998 with no immediate family. Decedent appointed his cousin, petitioner Jean R. Kiernan, and her husband, petitioner Robert D. Kiernan, Sr., as coexecutors of the will. In the fifth paragraph thereof, he established a trust comprised of "any and all stocks and/or bonds which shall be owned by me at the time of my death" and provided that the income therefrom shall be used to "as-

sist in paying for post high school education of the grandchildren of [petitioners]". This paragraph further provided that, when the youngest grandchild turned the age of 30, the principal of the trust was to be distributed to Maureen Kiernan, petitioners' daughter, but if Maureen Kiernan did not survive, then equally to the grandchildren. In the residuary clause of the will, decedent bequeathed 60% of his estate in varying proportions to five charities, Our Lady of Lourdes Roman Catholic Church, The Hospice of the Southern Tier, The Glenmarry Home Mission, The Sisters of Mercy and The Sisters of St. Joseph. He bequeathed the remaining 40% in equal shares to petitioners and their children, Robert D. Kiernan, Jr. and his wife, Diane Kiernan, Maureen Kiernan and Thomas Kiernan.

At the time of his death, decedent owned stock in individual companies valued at $171,399.53. In addition, he held interests in four investment and brokerage accounts valued at $324,515.90. After the will was admitted to probate, petitioners applied for construction of the will to ascertain, *inter alia*, whether the phrase "any and all stocks and/or bonds which shall be owned by me at the time of my death" in the fifth paragraph included decedent's interest in the investment and brokerage accounts or was limited to the shares of stock he held in individual companies. Upon finding that decedent's intent could be ascertained without resort to extrinsic evidence, Surrogate's Court did not hold a hearing and ruled, *inter alia*, that the subject language encompassed only decedent's stock in individual companies and that his interest in the four investment and brokerage accounts passed under the residuary clause. The guardian ad litem appointed for the grandchildren appeals.

Initially, the primary purpose of a will construction proceeding is to ascertain and give effect to the testator's intent (*see, Matter of Gustafson*, 74 NY2d 448, 451; *Matter of Carmer*, 71 NY2d 781, 785; *Matter of Thall*, 18 NY2d 186, 192). Such intent is to be gleaned from "a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed" (*Matter of Fabbri*, 2 NY2d 236, 240; *see, Matter of Larkin*, 9 NY2d 88, 91). If a reading of the will evinces a dominant plan of distribution, the various provisions must be interpreted in light of that purpose (*see, Matter of Carmer, supra*, at 785-786; *Matter of Larkin, supra*, at 91). Moreover, where the testator's intent may be ascertained from within the four corners of the document, resort to extrinsic evidence is inappropriate (*see, Matter*

*of Cord*, 58 NY2d 539, 544; *Matter of Knapp*, 119 AD2d 676, 677). If, on the other hand, a provision of the will is ambiguous, extrinsic evidence is properly considered in discerning the testator's true intent (*see, Matter of Goldstein*, 46 AD2d 449, 451, *affd* 38 NY2d 876).

In our view, the language at issue is ambiguous. At the time of his death, decedent owned both shares of stock in individual companies and an interest in four different investment and brokerage accounts comprised of various stocks, mutual funds and government securities. It is not clear whether decedent intended to include the four investment and brokerage accounts in the fifth paragraph of his will or dispose of those assets through his residuary clause. At least one of the accounts appears to have been in existence at the time of the execution of the will, although it was not specifically mentioned therein. Inasmuch as the accounts are comprised of mixed assets not held directly by decedent, it may certainly be argued that they are not traditional stocks and bonds of the type referenced in the fifth paragraph of the will.

Furthermore, our review of the will in its entirety does not disclose a dominant plan by decedent to benefit a particular class of beneficiaries. While decedent left 60% of his residuary estate to various charities, he left 40% to petitioners and their children, as well as all of his real property to petitioners' children. In addition, the fifth paragraph evinces an intent to benefit petitioners' grandchildren with the income from the trust and to benefit petitioners' daughter, Maureen, with the principal upon the youngest grandchild turning the age of 30 or, in the event of her death, an equal distribution to the grandchildren. Decedent's cousins as well as their children and grandchildren were obvious objects of decedent's bounty in addition to the charities.

Extrinsic evidence may assist in interpreting the fifth paragraph of the will and determining decedent's true intent regarding the disposition of the investment and brokerage accounts. Therefore, the matter is remitted to Surrogate's Court for a hearing (*see, Matter of Schaffner*, 162 AD2d 972). Certainly, we appreciate that there may not be any additional evidence submitted to assist the court in determining decedent's intent. However, under the circumstances herein, the parties should be given the opportunity to submit proof before the court makes the final determination.

Crew III, Spain, Carpinello and Graffeo, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as construed the fifth paragraph of

decedent's last will and testament as excluding the four investment and brokerage accounts owned by decedent at the time of his death; matter remitted to the Surrogate's Court of Chemung County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.